**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **ALAN DINN AND ROBIN DINN,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. C-08-309** |
| | § | |
| **HOOKING BULL BOATYARD, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

**MEMORANDUM AND ORDER**

Pending before the Court are Defendant/Counter-Plaintiff Hooking Bull Boatyard, Inc.'s ("Hooking Bull") Motion for Partial Summary Judgment (Dkt. No. 27) and Motion for Summary Judgment on its Counterclaim (Dkt. No. 28), to which Plaintiffs/Counter-Defendants Alan and Robin Dinn ("the Dinns") have responded (Dkt. No. 30), and Hooking Bull has replied (Dkt. Nos. 33, Ex. A & 34, Ex. A).[1] Having reviewed the motions, response, replies, record, and relevant law, the Court is of the opinion that Hooking Bull's Motion for Partial Summary Judgment (Dkt. No. 27) should be GRANTED in part and DENIED in part, and its Motion for Summary Judgment on its Counterclaim (Dkt. No. 28) should be DENIED.

---

1. Hooking Bull filed two opposed motions for leave to reply to the Dinns' response brief. (Dkt. Nos. 33 & 34.) While Hooking Bull indicated that both motions were opposed, the Dinns did not respond to either motion. The Local Rules for the Southern District of Texas require a non-movant to respond to a motion within twenty days from the day the motion is filed. *See* S.D. Tex. Local Rules 7.3 & 7.4 (providing that opposed motions will be submitted to the judge for ruling twenty days from filing, responses must be filed by the submission date, and failure to respond will be taken as a representation of no opposition). Therefore, Hooking Bull's Opposed Motion for Leave to File Its Reply to Counter-Defendants' Response to Counter-Plaintiff's Motion for Summary Judgment on its Counter-Claim (Dkt. No. 33) and Opposed Motion for Leave to File Its Reply to Plaintiffs' Response to Defendant's Motion for Partial Summary Judgment (Dkt. No. 34) are GRANTED.

### I.  Factual and Procedural Background [2]

In January 2008, the Dinns contacted Hooking Bull's principal, James Jordan, about performing some repairs to their 45-foot Harris sail racing yacht, the S/V CURANDERO. Specifically, the Dinns were interested in having Hooking Bull replace the teak rub rails on the vessel, replace areas of fiberglass on the keel, prepare and repaint the vessel's above-waterline hull with Awlgrip®/Awlgraft® metallic aquamarine ("Awlgrip") paint, and prepare and repaint the vessel's below-waterline hull with anti-fouling paint.

Mr. Dinn participated in several conversations with Mr. Jordan before delivering the S/V CURANDERO to Hooking Bull, both over the phone and at Hooking Bull's premises in Rockport, Texas. On one visit to the boatyard, Mr. Jordan used his wife's boat, which Hooking Bull had recently painted with Awlgrip paint, as a model to demonstrate the quality of Hooking Bull's work. He also told Mr. Dinn that Hooking Bull had "the best paint guy in the area," or words to that effect. In addition, Hooking Bull displayed promotional materials and literature showing that Hooking Bull is an approved Awlgrip supplier and painter. Based on the representations made to Mr. Dinn by the Jordans and Mr. Dinn's observations of Mrs. Jordan's boat, the Dinns decided to allow Hooking Bull to repair and paint the S/V CURANDERO and proceeded to purchase $1,178.00 worth of Awlgrip paint. On January 22, 2008, the Dinns sailed the S/V CURANDERO to Hooking Bull's boatyard. That same day, Mr. Dinn entered into a written contract with Hooking Bull for the purpose of making the aforementioned repairs ("the Contract") (Dkt. No. 28, Ex. A).

Hooking Bull had the S/V CURANDERO in its possession from January 22, 2008 until approximately July 27, 2008. During the roughly six-month period the Dinns' yacht

---

2.  For purposes of its pending motions for summary judgment only, Hooking Bull does not dispute the facts as set forth by the Dinns in their Complaint.

was at Hooking Bull's boatyard, the Dinns observed Hooking Bull's employees perform below-waterline paint jobs on at least three other vessels. During this time, Hooking Bull also attempted on two occasions to apply the Awlgrip paint to the hull of the S/V CURANDERO, but the workmanship was unacceptable. Based on Mr. Dinn's affidavit and pictures attached thereto (Dkt. No. 30, Ex. A), there were visible shadows, patterns, swirls, and light spots in the paint, and the bottom of the vessel had a rough texture. The Dinns also had the boat surveyed by a certified marine surveyor, Harry A. Ficken, Jr., who confirmed that not only was Hooking Bull's work substandard, Hooking Bull had actually damaged the S/V CURANDERO in the amount of $20,188.63.

According to the Dinns, the poor workmanship was due in part to the fact that John Gaitlin, Hooking Bull's primary painter, did not want to perform the work because he was too busy and lacked sufficient tools and equipment to perform the contracted-for work, but Mr. Jordan overruled his objections. Mr. Jordan admitted to Mr. Dinn that the paint had not been properly applied and offered to repaint the S/V CURANDERO with one coat of flat-colored paint. Based on Hooking Bull's repeated failed attempts at painting the vessel, Mr. Dinn refused Mr. Jordan's offer. Instead, Mr. Dinn contacted another company, Gulf Composites, which estimated it will cost $22,000.00 to repair and properly repaint the S/V CURANDERO with Awlgrip paint. Despite the poor workmanship and damage done to their yacht, the Dinns still paid Hooking Bull $16,983.16 for its services.

The Dinns then filed suit against Hooking Bull, alleging causes of action for breach of maritime contract, breach of implied warranty of workmanlike performance, breach of bailment, violation of the Texas Deceptive Trade Practices Act (DTPA), and negligent

performance of contractual obligations under both Texas and maritime law.[3] The Dinns seek

to recover:

> (1) loss of the benefit of the bargain (total of invoices paid to Hooking Bull);
>
> (2) loss in value to the S/V CURANDERO (repair costs);
>
> (3) loss of use of enjoyment of the S/V CURANDERO;
>
> (4) payment of slip fees;
>
> (5) attorney's fees; and
>
> (6) mental anguish damages.

Hooking Bull subsequently filed a counterclaim against the Dinns for attorney's fees

under the Parties' Contract. Hooking Bull now moves for summary judgment on its

counterclaim for attorney's fees and for partial summary judgment on the Dinns' claims for

any damages exceeding basic repair costs.

## II.  Summary Judgment Standard

Summary judgment is proper "if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material

fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c);

*see also Christopher Village, LP v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999). "For any

matter on which the non-movant would bear the burden of proof at trial . . . , the movant

may merely point to the absence of evidence and thereby shift to the non-movant the burden

of demonstrating by competent summary judgment proof that there is an issue of material

fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718—19 (5th Cir.

---

3.  The Dinns added a claim for negligent performance of contractual obligations under Texas state law in their fourth amended complaint (Dkt. No. 40, Ex. A). The Dinns indicated that Hooking Bull opposed their Motion for Leave to File Fourth-Amended Original Petition and Answer to Counter-Claim (Dkt. No. 40), but Hooking Bull did not file a response to this motion. Several months later, the Dinns filed their Fifth Amended Complaint (Dkt. No. 56), with no opposition from Hooking Bull. The Dinns' motion for leave to file a fourth amended complaint (Dkt. No. 40) is therefore DENIED as moot.

1995); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323—25 (1986). To prevent summary judgment, the non-movant must "respond by setting forth specific facts" that indicate a genuine issue of material fact. *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. *See Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir. 1998); *Texas v. Thompson*, 70 F.3d 390, 392 (5th Cir. 1995). "The court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). However, the non-movant cannot avoid summary judgment by presenting only "conclusory allegations" or "unsubstantiated assertions," such as the bare allegations of a complaint, but must present sufficient evidence, such as sworn testimony in a deposition or affidavit, to create a genuine issue of material fact as to the claim asserted. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). "Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that 'the better course would be to proceed to a full trial.'" *Freeman v. U.S.*, 2005 WL 3132185, *2 (S.D. Tex. Nov. 22, 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

### III.  Discussion

Hooking Bull moves for partial summary judgment on the Dinns' claims, alleging that because the Dinns invoked this Court's admiralty jurisdiction, and the Contract was a

maritime contract, then damages should be calculated under federal maritime law. Hooking Bull contends that federal maritime law does not allow the Dinns to recover damages for benefit of the bargain, loss of use, mental anguish, or attorney's fees. According to Hooking Bull, if Plaintiffs are entitled to recover any damages at all, their recovery must be limited to repair damages. Hooking Bull also moves for summary judgment on its counterclaim, contending that under federal maritime law, the Court has no discretion to deny its claim for attorney's fees under the Contract.

### A.  Admiralty Jurisdiction and Choice-of-Law

"It is well settled that a contract to repair a vessel is maritime." *Alcoa S.S. Co. v. Charles Ferran & Co.*, 383 F.2d 46, 50 (5th Cir. 1967) (citing *North Pacific Steamship Co. v. Hall Brothers Marine Railway & Shipbuilding Co.*, 249 U.S. 119 (1919); 1 BENEDICT ON ADMIRALTY, § 66 n.32 (6th ed., 1966 Supp. by C. R. Knauth)). Therefore, subject matter jurisdiction over this dispute is granted to the Court by 28 U.S.C. § 1333, which provides in part: "The district courts shall have original jurisdiction, exclusive of the courts of the States, of [a]ny civil case of admiralty or maritime jurisdiction . . . ." 28 U.S.C. § 1333(1).

The Parties have extensively briefed the issue of what contract remedies may be available under federal maritime law, but both sides ignore the fact that their Contract contains a choice-of-law provision that states, "This agreement shall be construed and interpreted and the legal relations created hereby shall be determined in accordance with the *laws of the State of Texas*." (Dkt. No. 28, Ex. A, ¶ 21 (emphasis added).) Under federal maritime law, "where the parties have included a choice of law clause, that state's law will govern unless the state has no substantial relationship to the parties or the transaction or the state's law conflicts with the fundamental purposes of maritime law." *Stoot v. Fluor Drilling*

*Services, Inc.*, 851 F.2d 1514, 1517 (5th Cir. 1988). *See also Hale v. Co-Mar Offshore Corp.*, 588 F. Supp. 1212, 1215 (D.C. La. 1984); RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2) (1971). Texas has a substantial relationship to the Parties in this case, all of which are Texas residents, and the Contract was formed and was to be performed in Texas. Moreover, the Court cannot conclude that application of Texas law in these circumstances would be contrary to the fundamental policies of maritime law. Thus, the Court will look to Texas substantive law to determine the contract remedies available to the Dinns as well as resolving Hooking Bull's counterclaim for attorney's fees.

The Court also notes that even though the Parties are not diverse, and Texas substantive law governs the Contract, the Court still has jurisdiction over this suit. *Exxon Corp. v. Chick Kam Choo*, 817 F.2d 307, 311 (5th Cir. 1987), rev'd on other grounds by *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140 (1988), ("A federal court sitting in admiralty . . . is not deprived of jurisdiction by reason of the fact that neither federal statutory law nor general maritime law provides the substantive law to resolve the matter before it."); *Ocean Science & Engineering Inc. v. Int'l Geomarine Corp.*, 312 F. Supp. 825, 828—29 (D.C. Del. 1970) ("[A] court may not be ousted of jurisdiction by agreement . . . . Once the contract is found to be maritime and within admiralty jurisdiction, an agreement amounting to a private repeal of 28 U.S.C. 1333 would be a nullity.") (citing *American Sugar Refining Co. v. The Anaconda*, 138 F.2d 765 (5th Cir. 1943), aff'd 322 U.S. 42 (1944)).

**B.  The Dinns' Available Remedies**

For purposes of its motion for summary judgment only, Hooking Bull does not dispute the facts as alleged by the Dinns. Instead, Hooking Bull claims that even assuming

the facts as alleged in the Dinns' Complaint are true, the Dinns cannot recover damages for benefit of the bargain, loss of use, attorney's fees, or mental anguish.

### 1.  Contract Remedies

#### a.  Benefit-of-the-Bargain Damages

The Dinns claim Hooking Bull breached its contractual obligations by failing to timely and properly (1) sand and fill in dings in the hull of the S/V CURANDERO; (2) apply rub rails to the S/V CURANDERO; and (3) sand, paint, and repaint the above- and below-waterline hulls of the S/V CURANDERO.[4] As a result of Hooking Bull's breach of contract, the bottom of the S/V CURANDERO had the texture and appearance of sandpaper when it should have been smooth, and the above-waterline hull showed visible cracking, swirls, halos, tiger-striping, and patterns in the paint when it should have appeared uniform and consistent. Because of Hooking Bull's alleged breach of the Contract, the Dinns claim they are entitled to benefit-of-the-bargain damages for monies paid to Hooking Bull, as well as compensation for the cost of having the S/V CURANDERO repaired and repainted elsewhere.

Under Texas law, the proper measure of damages in breach-of-contract cases is just compensation for the loss or damage actually sustained, commonly referred to as the benefit of the bargain. *Bowen v. Robinson*, 227 S.W.3d 86, 96 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). Generally, "the complaining party is entitled to recover the amount necessary to put him in as good a position as if the contract had been performed." *Smith v.*

---

4.  The Dinns further allege Hooking Bull breached its contractual obligations by breaching its express warranties that it was familiar with Awlgrip paint and could "turn out good work" by using Mrs. Jordan's boat as a display model. The Dinns also claim Hooking Bull failed to supervise and train its employees, failed to use adequate equipment and tools for work it contracted to perform, and ignored clear labeling instructions on the Awlgrip and anti-fouling paints it used. These allegations are more properly categorized as breach of warranty and negligent performance of contractual obligations, respectively, which the Dinns also brought against Hooking Bull.

*Kinslow*, 598 S.W.2d 910, 912 (Tex. Civ. App.—Dallas 1980, no writ) (citation omitted). In contracts for the construction or repair of property, a plaintiff may recover the reasonable cost of remedying any defects in performance or of getting the whole job done elsewhere if there has been a complete failure of performance. *See Ashley v. Bizzell*, 694 S.W.2d 349, 353 (Tex. App.—San Antonio 1985, writ. ref'd n.r.e.). However, the complaining party cannot recover damages exceeding the amount he would have received had the contract not been broken. *Texas Pacific Coal & Oil Co. v. Stuard*, 7 S.W.2d 878, 881 (Tex. Civ. App.— Eastland 1928, writ. ref'd).

Here, the Dinns seek compensation for monies paid to Hooking Bull as well as the cost of having the S/V CURANDERO repaired and properly painted elsewhere. If the Dinns were allowed to recover damages under both theories, they would be in a better position than if Hooking Bull had performed perfectly under the Contract. Therefore, the Dinns may recover either the amount paid to Hooking Bull, or the amount necessary to repair and properly paint the vessel elsewhere, but not both.

### b.  Loss-of-Use Damages

The Dinns claim they reasonably expected that Hooking Bull would complete the agreed-upon repairs in six to eight weeks, and Hooking Bull further breached the Contract when it kept the S/V CURANDERO in its possession for more than six months. According to Mr. Dinn, he and his wife ordinarily used the vessel on a weekly basis, "but were denied that pleasure due to the extended time Defendant had S/V CURANDERO." (Dkt. No. 30, Ex. A at 2.) The Dinns seek $10,000.00 to compensate them for their loss of use and enjoyment of the S/V CURANDERO during the time period she was in Hooking Bull's possession.

Under Texas law, a plaintiff may recover loss-of-use damages if the defendant fails to complete work within the time period fixed by a contract. *See Ryan v. Thurmond*, 481 S.W.2d 199, 206 (Tex. Civ. App.—Corpus Christi 1972, writ ref'd n.r.e.). Here, the Contract between Mr. Dinn and Hooking Bull did not provide a completion date for the work. (Dkt. No. 19, Ex. 2.) Moreover, the Contract explicitly states, "Any completion date give to customer is valid only if received in writing and signed by Hooking Bull Boatyard." (*Id.* ¶ 24.) The Dinns have not provided the Court with a written completion date signed by Hooking Bull, nor have they alleged that such a document exists. Thus, the Dinns cannot recover damages for loss of use of the S/V CURANDERO during the six-month period she was in Hooking Bull's possession.

### c.  Attorney's Fees

The Texas attorney's fees statute provides that a party may recover reasonable attorney's fees "in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract," TEX. CIV. PRAC. & REM. CODE § 38.001(8), and "the law . . . existing at the time a contract is made becomes a part of the contract and governs the transaction." *Tex. Nat'l Bank v. Sandia Mortgage Corp.*, 872 F.2d 692, 698 (5th Cir. 1989) (quoting *Wessely Energy Corp. v. Jennings*, 736 S.W.2d 624, 626 (Tex. 1987). Thus, the Texas attorney's fees statutory scheme is a part of the Contract between the Dinns and Hooking Bull, unless the Parties waived their right to recover attorney's fees under that section. *See id.*

To waive or contract around the Texas attorney's fees statute requires specificity. *Texas Nat. Bank v. Sandia Mortg. Corp.*, 872 F.2d 692, 701 (5th Cir. 1989). "This is because '[w]aiver is an intentional relinquishment of a known right or intentional conduct

inconsistent with claiming that right.'" *Id.* (quoting *Sun Exploration & Production Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987)). Without specificity, the party giving up the right does not know what he is relinquishing, and therefore no valid waiver can occur. *Id.* The Contract between the Parties contains no provision waiving the Dinns' right to recover attorney's fees under TEX. CIV. PRAC. & REM. CODE § 38.001(8), nor has Hooking Bull presented any evidence that such a waiver occurred. If the Dinns prevail on their breach of contract claim, they are also entitled to recover attorney's fees.

### 2.  DTPA Remedies

The Dinns allege Hooking Bull violated the Texas Deceptive Trade Practices Act (DTPA), TEX. BUS. & COMM. CODE § 17.41 *et seq.*, when it breached its implied warranty of good and workmanlike performance in the Contract by knowingly failing to: (1) timely, properly, and adequately sand, prime, paint, and repaint the above- and below-waterline hulls of the S/V CURANDERO; (2) properly supervise, train, and monitor its employees who were performing repairs to the S/V CURANDERO; (3) use adequate tools and equipment for performance of the work; (4) give adequate time for preparation and performance of the work; and (5) follow the written instructions for mixing, applying, and treating the Awlgrip and anti-fouling paints. The Dinns further allege Hooking Bull violated the DTPA by breaching its express warranties that: (1) it was familiar with Awlgrip metallic paint and could properly prepare and paint the S/V CURANDERO; (2) it had "the best painter in the area," or words to that effect, and then failing to properly supervise, train, and monitor its employees who were performing repairs to the S/V CURANDERO; and (3) Mrs. Jordan's boat and the quality of finish thereon was an accurate model and reflection of Hooking Bull's work.

Section 17.50 of the DTPA provides that a consumer may maintain an action where a defendant's breach of an express or implied warranty constitutes a producing cause of economic damages or mental anguish. *Id.* § 17.50(a)(2). Therefore, the Dinns claim they are entitled to recover damages for mental anguish as well as attorney's fees as provided for under the DTPA. TEX. BUS. & COMM. CODE §§ 17.50(b)(1) & 17.50(d). Hooking Bull, however, contends the Dinns' claims under the DTPA are preempted by general maritime law, which precludes recovery of mental anguish damages and attorney's fees under the facts as pled in the Dinns' Complaint.

### a.  DTPA Preemption

Deceptive trade practice claims sound in tort. *See Continental Dredging, Inc. v. De-Kaizered, Inc.*, 120 S.W.3d 380, 391 (Tex. App.—Texarkana 2003, pet. denied). Where the tort suffered by a plaintiff is maritime and not of mere local concern, the rights and liabilities of the parties arise out of and are dependent upon the general maritime law and cannot be enlarged or impaired by state law. *East River Steamship Co. v. Transamerica DeLaval, Inc.*, 476 U.S. 858, 864—65 (1986); *Robins Dry Dock Co. v. Dahl*, 266 U.S. 449, 457 (1925). The Constitution mandates that all cases of admiralty and maritime jurisdiction are subject to the judicial power of the United States, U.S. CONST. art. II, § 2, cl. 3, and where state law conflicts with the general maritime, the federal law is superior and must be applied. *Garrett v. Moore-McCormack, Inc.*, 317 U.S. 239, 243—45 (1942); *Southern Pac. Co. v. Jensen*, 244 U.S. 205, 212 (1912).

According to Hooking Bull, because this case arises under the Court's admiralty jurisdiction, the Dinns' DTPA claims are preempted by federal maritime law. The Dinns explain that they are not asking the Court to supplement or replace existing federal maritime

remedies with state law remedies, but are instead asking the Court to exercise supplemental jurisdiction over an entirely different class of state law claims, which provide for entirely different remedies. Thus, the Court must determine whether the Dinns' claims under the DTPA are maritime torts that may be preempted by federal maritime law or torts of local concern governed by Texas law.

For the Court to exercise admiralty jurisdiction over a tort claim, the activity from which the claim arises "must satisfy conditions both of location and of connection with maritime activity." *Scarborough v. Clemco Industries*, 391 F.3d 660, 663 (5th Cir. 2004) (citing *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995)). To satisfy the location test, the tort must have been committed on navigable water or the injury suffered on land must have been caused by a vessel on navigable water. *Grubart*, 513 U.S. at 534. To satisfy the connection test, the Court must consider two issues: (1) whether the "incident has a potentially disruptive impact on maritime commerce;" and (2) "whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Id.* (internal citations and quotations omitted).

Just because the Contract between Hooking Bull and Mr. Dinn is a maritime contract, it does not necessarily follow that the Dinns' breach of warranty claims are maritime torts subject to this Court's admiralty jurisdiction. In *Kuehne & Nagel v. Geosource, Inc.*, 874 F.2d 283 (5th Cir.1989), the plaintiff alleged a claim for the tort of fraudulent inducement to a maritime affreightment contract. The Fifth Circuit held that the district court did not have admiralty jurisdiction over the plaintiff's claim, reasoning:

> [Defendant's] alleged misrepresentations to [Plaintiff] that induced [Plaintiff] to enter the contracts were made at a [Defendant]-sponsored meeting at a

> hotel in Hamburg, West Germany. Thus, the tortious acts occurred before
> [Plaintiff] signed the contract. The misrepresentations had their desired
> "effect" on land when they prompted [Plaintiff] to sign the contracts of
> affreightment.

*Id.* at 289. Likewise, in *Crowley Liner Services, Inc. v. Transtainer Corp.*, 2007 WL 433352

(S.D. Fla. 2007), the plaintiff, an ocean-going common carrier, sought unpaid freight and

related charges pursuant to contracts of carriage. The defendant counterclaimed for

misrepresentation, fraud, and violation of Florida's Deceptive and Unfair Trade Practices

Act (FDTPA), alleging the plaintiff had falsely represented that the same carrying costs

would apply to the defendant's shipments as to the defendant's competitors.  Relying on

*Kuehne*, the court determined that it did not have admiralty jurisdiction over the defendant's

FDTPA counterclaim, even though the claim involved a maritime contract.

> [T]he alleged [DTPA] violations did not occur on navigable water. Moreover,
> this is not a case where an injury on land was caused by a vessel on navigable
> water. The defendant alleges that the purportedly false representations made
> to the defendant by the plaintiff's representatives occurred at the defendant's
> Miami office. . . . Although there may be some connection between the
> alleged tort and traditional maritime activity, the location test for admiralty
> jurisdiction is not satisfied in this case. . . .  Accordingly, maritime law and
> its general prohibition against attorney's fees does not apply.

*Crowley*, 2007 WL 433352 at *6.

According to the facts as alleged in the Dinns' Complaint, based upon

representations Mr. Jordan made to Mr. Dinn, as well as the use of Mrs. Jordan's vessel as a

model, Mr. Dinn decided that he could entrust Hooking Bull to capably and competently

repair and repaint the S/V CURANDERO and entered into the Contract with Hooking Bull.

In reality, Hooking Bull knew that it did not have adequate time to complete the work it had

contracted to perform; knew it had not properly supervised, trained, and monitored its

employees who were performing repairs to the S/V CURANDERO; and knew its employees

14

had not properly painted the vessel. All the while, Hooking Bull continued to charge Mr. Dinn for work that had been improperly performed. It is unclear where these events took place—in an office on land, in dry dock, on the S/V CURANDERO, or on another boat—but Hooking Bull has offered no evidence that any of the events giving rise to the Dinns' DTPA claims occurred on navigable water.

Hooking Bull has failed to establish that the Dinns' breach of warranty claims satisfy the location test and have sufficient connection with maritime activity in order to be brought under the Court's admiralty jurisdiction. *See Alderman*, 95 F.3d at 1064. To the extent that Hooking Bull moves for summary judgment claiming the DTPA is preempted by federal maritime law, its motion is DENIED.

### b.  Attorney's Fees

The DTPA provides that "[e]ach consumer who prevails shall be awarded court costs and reasonable and necessary attorneys' fees." TEX. BUS. & COMM. CODE § 17.50(d). If the Dinns prevail on their DTPA claim at trial, they may recover attorney's fees from Hooking Bull.

### c.  Mental Anguish Damages

Under the DTPA, a prevailing plaintiff may recover damages for mental anguish. TEX. BUS. & COMM. CODE § 17.50(a). The amount of damages depends on the mental state of the defendant, as determined by the trier of fact. The plaintiff is not required to plead or prove that the defendant's wrongful action was willful or committed knowingly in order to recover mental anguish damages. *Milt Ferguson Motor Co. v. Zeretzke*, 827 S.W.2d 349, 357 (Tex. App.—San Antonio 1991, no writ.). However, if the defendant's conduct was committed knowingly, the plaintiff may recover mental anguish damages up to three times

the amount of economic damages, and if the defendant's conduct was intentional, the plaintiff may recover damages up to three times the amount of damages for mental anguish and economic damages. TEX. BUS. & COMM. CODE § 17.50(b)(1).

In its motion for summary judgment, Hooking Bull argues that even if mental anguish damages were available, the Dinns have not plead any facts that would support a claim for such damages. In response, the Dinns proffered the affidavit of Mr. Dinn, in which he swears:

> The process of dealing with Defendant and the poor workmanship have caused me and my wife to experience grief and mental anguish, loss of use and enjoyment of the vessel, and slip fees. Ordinarily my wife and I use the vessel on a weekly basis but we were denied that pleasure due to the extended time Defendant had S/V CURANDERO.

(Dkt. No. 30, Ex. A at 2.) Hooking Bull replied, "Alan Dinn's conclusory statement that he suffered 'mental anguish and grief' is not sufficient to create a fact issue in order to defeat Defendant's motion for summary judgment on this point." (Dkt. No. 34, Ex. A at 8.)

Hooking Bull is correct. Under Texas law, damages for mental anguish must be supported by either "'direct evidence of the nature, duration, and severity of [plaintiffs'] anguish, thus establishing a substantial disruption in the plaintiffs' daily routine,' or other evidence of 'a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger.'" *Burlington Coat Factory Warehouse of El Paso, Inc. v. Flores*, 951 S.W.2d 542, 548 (Tex. App.—El Paso 1997, no writ) (quoting *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995)). The Dinns have offered no evidence to substantiate that they actually suffered mental anguish, that the anguish was severe, or that such severe anguish substantially disrupted their lives.

Hooking Bull is GRANTED summary judgment with respect to the Dinns' claim for mental anguish damages.

### d.  Loss-of-Use Damages

Loss-of-use damages are available under the DTPA where a plaintiff has been deprived of the use of his property. *See, e.g.*, *Luna v. North Star Dodge Sales, Inc.*, 667 S.W.2d 115 (Tex. 1984); *Town E. Ford Sales, Inc. v. Gray*, 730 S.W.2d 796 (Tex. App.—Dallas 1987, no writ); *Metro Ford Truck Sales, Inc. v. Davis*, 709 S.W.2d 785 (Tex. App.—Fort Worth 1986, writ ref'd n.r.e.). Loss-of-use damages are calculated by determining the rental value for a similar item while the damaged item is being repaired. *See id.* This is true even if the plaintiff does not actually rent a substitute or show any amounts expended during the period of loss. *Luna*, 667 S.W.2d at 118. Calculation of damages "must of necessity . . . vary with the character of the property, and somewhat with the peculiar circumstances of the case." *Id.* at 119 (quoting *Craddock v. Goodwin*, 54 Tex. 578 (1881)).

While the Dinns may not recover loss-of-use damages under a breach of contract theory, they may recover loss-of-use damages, equal to the rental value for a similar yacht while the S/V CURANDERO is being repaired, if they prevail on their DTPA claim at trial. Because the S/V CURANDERO is a pleasure yacht, and the Dinns claim to have used the vessel "weekly" and not every day, damages will be limited to their typical use, as determined by the trier of fact. *See Elias v. Mr. Yamaha, Inc.*, 33 S.W.3d 54, 62 (Tex. App.—El Paso 2000, no pet.) (awarding loss-of-use damages to buyer of jet ski but limiting recovery to summer weekends where evidence showed buyer typically used such watercraft only on weekends after Memorial Day).

### C.  Hooking Bull's Counterclaim for Attorney's Fees

Hooking Bull has filed a counterclaim against the Dinns, alleging it is entitled to attorney's fees for defending this lawsuit because the Contract between the Parties provides:

> In the event any efforts of any kind are required of Hooking Bull Boatyard to enforce this agreement or interpret any of its terms, or for any breach of this agreement, Hooking Bull Boatyard shall be entitled to such amount from the owner for attorney's fees and costs expended.

(Dkt. No. 28, Ex. A, ¶ 18.) According to Hooking Bull, the Dinns' suit for breach of contract necessarily invokes this provision.  Moreover, because the Dinns allege that Hooking Bull failed to "timely" make certain repairs, this lawsuit will require the interpretation of certain terms of the Contract in order to ascertain the timeframe in which the repairs were to be completed. Therefore, Hooking Bull claims, "this Court has no discretion to deny Hooking Bull Boatyard's counter-claim for attorney's fees." (Dkt. No. 28 at 5.) In response, the Dinns argue Hooking Bull's counterclaim is barred because (1) Hooking Bull breached the Contract; and (2) the aforementioned Contract provision relied upon by Hooking Bull is vague and legally unenforceable.

The Court first notes that Hooking Bull cites several maritime cases purporting to support its argument that it must be awarded attorney's fees under the Contract. However, both Parties once again ignore the fact that the Contract contains a choice-of-law provision stating that Texas law governs the terms of the Contract.

The Texas Supreme Court has consistently held that a prevailing party cannot recover attorney's fees from an opposing party unless permitted by statute or by contract between the parties. *Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 95 (Tex. 1999) (citing *Travelers Indem. Co. of Conn. v. Mayfield*, 923 S.W.2d 590, 593 (Tex. 1996); *Dallas Cent. Appraisal Dist. v. Seven Inv. Co.*, 835 S.W.2d 75, 77 (Tex. 1992); *First City Bank-Farmers*

*Branch v. Guex*, 677 S.W.2d 25, 30 (Tex. 1984); *New Amsterdam Cas. Co. v. Texas Indus., Inc.*, 414 S.W.2d 914, 915 (Tex. 1967)). While the Texas attorney's fees statute provides that a person suing on a contract may recover reasonable attorney's fees, attorney's fees may not be recovered under the statute for successfully defending a contract claim. Tex. Civ. Prac. & Rem. Code § 38.001(8) (party may recover reasonable attorney's fees "*in addition to* the amount of a valid claim and costs, if the claim is for . . . an oral or written contract") (emphasis added); *Probus Properties v. Kirby*, 200 S.W.3d 258, 265 (Tex. App.—Dallas 2006, pet. denied) (citing *Mustang Pipeline, Inc. v. Driver Pipeline, Inc.*, 134 S.W.3d 195, 201 (Tex. 2004)).

However, parties to a contract may provide by agreement that in the event of a suit on the contract, the *prevailing party* is entitled to recover attorney's fees. *Probus Properties*, 200 S.W.3d at 265; *Head v. U.S. Inspect DFW, Inc.*, 159 S.W.3d 731, 749 (Tex. App.—Fort Worth 2005, no pet.).[5] "The 'prevailing party' is the party who successfully prosecutes or defends the action on the main issue." *Probus Properties*, 200 S.W.3d at 265. Here, Hooking Bull claims that under the terms of the Contract, it is entitled to recover attorney's fees from the Dinns regardless of who eventually prevails at trial. Hooking Bull has not cited, nor is the Court able to locate, any Texas case supporting recovery under these circumstances.[6]

---

5.  Such a provision commonly reads, "Any signatory to this contract, who is the prevailing party in any legal proceeding brought under or with relation to this contract or transaction shall be additionally entitled to recover court costs and reasonable attorney fees from the non-prevailing party." *G. Richard Goins Const. Co., Inc. v. S.B. McLaughlin Associates, Inc.*, 930 S.W.2d 124, 130 (Tex. App.—Tyler 1996, writ den.); *American Apparel Products, Inc. v. Brabs, Inc.*, 880 S.W.2d 267, 271 (Tex. App.—Houston [14 Dist.] 1994, no writ).

6.  After extensive research, the only circumstance the Court can find in which a trial court may award attorney's fees to a non-prevailing party under Texas law is for claims brought under the Texas Uniform Declaratory Judgment Act. Tex. Civ. Prac. & Rem. Code § 37.009 ("In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just."); *Humana Ins.*

Moreover, to waive or contract around the Texas attorney's fees statute requires specificity, and the Fifth Circuit has opined that "[i]t is entirely possible . . . that when the parties [to a contract] possess unequal bargaining power, the Texas courts will not permit the party in the dominant position to extract a waiver of the Texas legislature's pronouncement of the availability of attorney's fees in Section 38.001 *et seq*." *Id.* Mr. Dinn did not draft the contract, and he has sworn that he "had no intent to indemnify Hooking Bull Boatyard, Inc. for its breach of contract or failure to properly perform the work it agreed to do." (Dkt. No. 30, Ex. A at 2.) Likewise, the Contract provision relied on by Hooking Bull contains prefatory language—"In the event any efforts of any kind are required of Hooking Bull Boatyard to enforce this agreement . . . ."—that implies the Dinns are only responsible for Hooking Bull's attorney's fees if the Dinns are in breach, and Hooking Bull must sue to enforce the Contract. Hooking Bull was the drafter of the Contract and the dominant party in this transaction, and if Texas courts would not allow Hooking Bull to draft around Section 38.001 without explicit language, then it is absurd to conclude that Texas law would allow Hooking Bull to trick the Dinns into being responsible for Hooking Bull's attorney's fees, even where Hooking Bull was the breaching party.

Hooking Bull's motion for summary judgment on its counterclaim is therefore DENIED.

### IV.  Conclusion

If the Dinns prevail on their breach of contract claim at trial, they may recover: (1) attorney's fees, and (2) either benefit-of-the-bargain damages or repair damages, but not

---

*Co. v. Texas Health Ins. Risk Pool*; 257 S.W.3d 402, 411 (Tex. App.—Corpus Christi 2008, no pet.) ("In proper cases, a trial court may award attorney's fees to a non-prevailing party.")

both. If the Dinns prevail on their DTPA claim at trial, they may recover: (1) attorney's fees, and (2) loss-of-use damages while the S/V CURANDERO is being repaired.[7] The Dinns cannot recover damages for loss of use of the S/V CURANDERO during the six-month period the yacht was in Hooking Bull's possession, nor can they recover mental anguish damages. Hooking Bull's motion for partial summary judgment (Dkt. No. 27) is therefore **GRANTED** in part and **DENIED** in part.

Hooking Bull's motion for summary judgment on its counterclaim for attorney's fees (Dkt. No. 28) is **DENIED**.

It is so **ORDERED**.

Signed this 16th day of July, 2009.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE

---

7. The Dinns concede that they would only be entitled to one recovery of attorney's fees, even if they prevail on both their breach of contract and DTPA claims.