IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ALAN DINN & ROBIN DINN, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. C-08-309 |
| | § | |
| HOOKING BULL BOATYARD, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendant/Counter-Plaintiff Hooking Bull Boatyard, Inc.'s ("Hooking Bull") Motion for Reconsideration on Its Motion for Partial Summary Judgment, and in the Alternative, Defendant's Opposed Motion to Dismiss (Dkt. No. 62), to which Plaintiffs/Counter-Defendants Alan and Robin Dinn ("the Dinns") have responded (Dkt. No. 65). Having reviewed the motion, response, record, and relevant law, the Court is of the opinion that Hooking Bull's motion should be DENIED.

**I. Background**

The specific facts giving rise to the instant action are set forth at length in the Court's July 16, 2009 Order on Hooking Bull's motions for summary judgment. *Dinn v. Hooking Bull Boatyard, Inc.*, 2009 WL 2161676 (S.D. Tex. July 16, 2009); (Dkt. No. 61). In sum, this case arises from Hooking Bull's alleged breach of a maritime contract to paint and repair the Dinns' racing yacht, the S/V CURANDERO ("the Contract") (Dkt. No. 28, Ex. A). Invoking the Court's admiralty jurisdiction, the Dinns allege causes of action under both federal maritime law and Texas law for breach of contract, breach of the implied warranty of workmanlike performance, negligent performance of contractual

1

obligations, and breach of bailment. The Dinns also ask the Court to exercise supplemental jurisdiction over their claims under the Texas Deceptive Trade Practices Act (DTPA). In response, Hooking Bull has counterclaimed for attorney's fees under the Parties' Contract.

On December 23, 2008, Hooking Bull moved for partial summary judgment on the Dinns' claims, arguing that federal maritime law precludes the Dinns from recovering any damages in excess of basic repair costs to the S/V CURANDERO (Dkt. No. 27). Hooking Bull also moved for summary judgment on its counterclaim for attorney's fees the same day (Dkt. No. 28). In a Memorandum and Order granting in part and denying in part Hooking Bull's Motion for Partial Summary Judgment and denying Hooking Bull's Motion for Summary Judgment on its Counterclaim, the Court concluded that: (1) federal maritime law requires the Court to give effect to a choice-of-law provision stating that Texas law governs the Parties' Contract; (2) the Dinns' DTPA claims are not preempted by federal maritime law; and (3) Hooking Bull is not entitled to summary judgment on its counterclaim for attorney's fees. *Dinn*, 2009 WL 2161676. Hooking Bull now asks the Court to reconsider its denial of summary judgment, or in the alternative, to dismiss this case.

## II. Hooking Bull's Motion for Reconsideration

### A. Legal Standard

The Federal Rules do not explicitly provide for motions for reconsideration of interlocutory orders. *St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997). However, a recent case out of the Southern District of Texas, Houston Division, succinctly provides the legal standard applicable to such motions:

> A court retains the power to revise any interlocutory order before the entry of judgment adjudicating all the parties' claims, rights, and liabilities. FED. R. CIV. P. 54(b). A motion seeking reconsideration of a judgment or order is generally considered a motion to alter or amend a judgment under Rule 59(e) if it seeks to change the order or judgment issued. *Standard Quimica De Venezuela v. Cent. Hispano Int'l, Inc.*, 189 F.R.D. 202, 204 (D.P.R. 1999). Rule 59(e)'s legal standards are applied to motions for reconsideration of interlocutory orders.

*T-M Vacuum Products, Inc. v. TAISC, Inc.*, 2008 WL 2785636, *2 (S.D. Tex. 2008). Accordingly, the Court will analyze Hooking Bull's motion using the same criteria applicable to a motion to alter or amend the judgment pursuant to Rule 59(e).

A Rule 59(e) motion "calls into question the correctness of a judgment," *Templet v. Hydrochem Inc.*, 367 F.3d 473, 478—79 (5th Cir. 2004), and thus "must clearly establish either a manifest error of law or fact or must present newly discovered evidence." *Schiller v. Physicians Res. Group, Inc.*, 342 F.3d 563, 567 (5th Cir. 2003). "Like a motion under Rule 59(e), a motion to reconsider may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised before the entry of the judgment or order." *T-M Vacuum Products, Inc.*, 2008 WL 2785636, at *2 (citing 11 CHARLES A. WRIGHT, ARTHUR R. MILLER, MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2810.1 at 127—28 (2d ed. 1995) (footnotes omitted); *see also Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863—64 (5th Cir. 2003).

### B. Analysis

#### 1. Texas Substantive Law Governs the Contract

Hooking Bull contends the Court erred when it determined that Texas substantive law governs the Parties' Contract. Specifically, Hooking Bull "takes issue with the Court's statement that this case does not have sufficient connection with maritime activity such that federal maritime law may apply." (Dkt. No. 62 at 2.) It appears,

3

however, that Hooking Bull has misread the Court's opinion. The Court does not dispute that the Parties' Contract is a maritime contract—a fact the Court specifically acknowledged: "'It is well settled that a contract to repair a vessel is maritime.'" *Dinn*, 2009 WL 2161676 at *3; (quoting *Alcoa S.S. Co. v. Charles Ferran & Co.*, 383 F.2d 46, 50 (5th Cir. 1967) (internal citations omitted)). Thus, the Court looked to federal maritime law to determine whether the Parties' choice-of-law provision, which states that Texas law governs the Contract, would control.[1] As the Court explained, "Under federal maritime law, 'where the parties have included a choice of law clause, that state's law will govern unless the state has no substantial relationship to the parties or the transaction or the state's law conflicts with the fundamental purposes of maritime law.'" *Dinn*, 2009 WL 2161676 at *3 (citing *Stoot v. Fluor Drilling Services, Inc.*, 851 F.2d 1514, 1517 (5th Cir. 1988); *Hale v. Co-Mar Offshore Corp.*, 588 F. Supp. 1212, 1215 (D.C. La. 1984); RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2) (1971)). Then, as required under federal maritime law, the Court analyzed whether this case has a sufficient connection with Texas such that Texas law should govern the Contract.

Hooking Bull further argues that the Court should ignore the Contract's choice-of-law provision because the Dinns did not explicitly invoke the provision, either in their pleadings or in response to Hooking Bull's motions for summary judgment. The Dinns explain that they did not expressly refer to the choice-of-law provision in their pleadings or response brief because they alleged claims for breach of contract, breach of the implied warranty of workmanlike performance, negligent performance of contractual obligations, and breach of bailment under both federal maritime law and Texas law. In

---

1. The choice-of-law provision states in full, "This agreement shall be construed and interpreted and the legal relations created hereby shall be determined in accordance with the *laws of the State of Texas.*" (Dkt. No. 28, Ex. A, ¶ 21 (emphasis added).)

4

any event, Hooking Bull's argument is now moot because the Dinns have since amended their complaint to invoke this choice-of-law provision, with no objection from Hooking Bull (Dkt. No. 68).

### 2. The Dinns' DTPA Claims Are Not Preempted by Federal Maritime Law

Hooking Bull further argues that the Court erred when it determined that the Dinns' DTPA claims are not preempted by federal maritime law. In support of this argument, Hooking Bull cites the Court's Memorandum and Order stating that Hooking Bull had "offered no evidence that any of the events giving rise to the Dinns' DTPA claims occurred on navigable water," *Dinn*, 2009 WL 2161676 at *7, and then offers new evidence to establish "the numerous connection[s] that this lawsuit has with maritime commerce . . . that the Court was obviously trying to find in Hooking Bull's previous pleadings." (Dkt. No. 62 at 4.) Specifically, Hooking Bull presents: (1) the affidavit of James P. Jordan, which states that Hooking Bull's sole business interest is in performing work to maritime vessels (Dkt. No. 62, Ex. A); (2) Hooking Bull's lease agreement with the Aransas County Navigation District, which states that Hooking Bull must use its premises for work that is connected to the maritime industry (*Id.*, Ex. B); (3) Hooking Bull's marine liability insurance policy (*Id.*, Ex. C); and (4) a map showing that of Hooking Bull's premises extend out into Cove Harbor (*Id.*, Ex. D).

As the Court explained *supra*, there is no doubt that this case has a connection to maritime activity, as the Contract between the Parties is a maritime contract. However, as the Court addressed in its prior Memorandum and Order, just because the Contract is a maritime contract, it does not necessarily follow that the Dinns' DTPA claims are maritime torts subject to this Court's admiralty jurisdiction. *Dinn*, 2009 WL 2161676, at

\*7. For the Court to exercise admiralty jurisdiction over a tort claim, the activity from which the claim arises must also satisfy the location test. *Id.* (citing *Scarborough v. Clemco Industries*, 391 F.3d 660, 663 (5th Cir. 2004); *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995)). "To satisfy the location test, the tort must have been committed on navigable water or the injury suffered on land must have been caused by a vessel on navigable water." *Id.* (citing *Grubart*, 513 U.S. at 534).

Here, the tort claimed by the Dinns is that Hooking Bull engaged in deceptive trade practices, which the Court previously summarized as follows:

> According to the facts as alleged in the Dinns' Complaint, based upon representations Mr. Jordan made to Mr. Dinn, as well as the use of Mrs. Jordan's vessel as a model, Mr. Dinn decided that he could entrust Hooking Bull to capably and competently repair and repaint the S/V CURANDERO and entered into the Contract with Hooking Bull. In reality, Hooking Bull knew that it did not have adequate time to complete the work it had contracted to perform; knew it had not properly supervised, trained, and monitored its employees who were performing repairs to the S/V CURANDERO; and knew its employees had not properly painted the vessel. All the while, Hooking Bull continued to charge Mr. Dinn for work that had been improperly performed.

*Dinn*, 2009 WL 2161676 at \*7. While Hooking Bull has offered evidence of this action's connection with maritime activity, Hooking Bull has still failed to establish that the aforementioned alleged deceptive practices occurred on navigable water.

Moreover, Hooking Bull admits that "any duty owed to Plaintiffs arises from the contract to repair their vessel. Otherwise, Hooking Bull has no duty to the Plaintiffs." (Dkt. No. 62 at 5.) As stated *supra*, the Parties' Contract contains a clause providing that "the legal relations created hereby shall be determined in accordance with the *laws of the State of Texas*." (Dkt. No. 28, Ex. A, ¶ 21 (emphasis added).) Therefore, any duty

6

Hooking Bull owed the Dinns arose under Texas law, including a statutory duty not to engage in deceptive business practices in connection with the Contract.

Finally, the Court addresses Hooking Bull's argument that federal maritime law must govern the Contract and preempt the Dinns' DTPA claims because "Hooking Bull is engaged exclusively in maritime commerce" and "the entire transaction with Plaintiffs, from the initial negotiations through the prosecution of this lawsuit, has had a disruptive impact upon maritime commerce." (Dkt. No. 62 at 5.) To the extent that Hooking Bull finds it "inherently unfair, not to mention counter-intuitive" that Texas law should apply to the transaction between the Parties, the Court notes that Hooking Bull was the drafter of the Contract and chose to include the Texas choice-of-law provision. Hooking Bull should not now be shocked or disappointed that Texas law governs this case.

Hooking Bull has not established either a manifest error of law or fact or presented newly discovered evidence that could not have been presented before the entry of the Court's July 16, 2008 Memorandum and Order. Therefore, the Court is of the opinion that Hooking Bull's Motion for Reconsideration on Its Motion for Summary Judgment should be DENIED.

**III. Hooking Bull's Motion to Dismiss**

In the alternative, Hooking Bull claims that because the Parties are Texas residents, and Texas law governs the Contract and the Dinns' DTPA claims, this case should be dismissed and tried in Texas state court. According to Hooking Bull, because the Parties are not diverse, "this Court has no interest in deciding the controversy between the parties" and "the procedural benefits of Federal Rule of Civil Procedure 9(h) [are] wholly inapplicable." (Dkt. No. 62 at 6—7.)

The Court previously addressed this issue and concluded that "even though the Parties are not diverse, and Texas substantive law governs the Contract, the Court still has jurisdiction over this suit." *Dinn*, 2009 WL 2161676 at *3 (citing *Exxon Corp. v. Chick Kam Choo*, 817 F.2d 307, 311 (5th Cir. 1987), rev'd on other grounds by *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140 (1988), ("A federal court sitting in admiralty . . . is not deprived of jurisdiction by reason of the fact that neither federal statutory law nor general maritime law provides the substantive law to resolve the matter before it."); *Ocean Science & Engineering Inc. v. Int'l Geomarine Corp.*, 312 F. Supp. 825, 828—29 (D.C. Del. 1970) ("[A] court may not be ousted of jurisdiction by agreement . . . . Once the contract is found to be maritime and within admiralty jurisdiction, an agreement amounting to a private repeal of 28 U.S.C. 1333 would be a nullity.") (citing *American Sugar Refining Co. v. The Anaconda*, 138 F.2d 765 (5th Cir. 1943), aff'd 322 U.S. 42 (1944)).

Still, Hooking Bull urges the Court to dismiss this case because "[t]here is no authority that the Court **must** retain jurisdiction over a lawsuit such as this." (Dkt. No. 62 at 7 (emphasis in original).) However, the Fifth Circuit has made clear that federal courts have a "virtually unflagging obligation" to exercise the jurisdiction conferred upon them by Congress. *Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 538 (5th Cir. 2002) (citing *Colo. River Water Conservation Dist. v. United States,* 424 U.S. 800, 817 (1976); *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 716 (1996)). "Abdication of the obligation to decide cases under the doctrine of abstention can be justified in 'exceptional circumstances,'" but unless such circumstances exist, "federal courts 'cannot abdicate their authority or duty in any case in favor of another jurisdiction.'" *Id.* (quoting *Vulcan*

8

*Materials Co. v. City of Tehuacana,* 238 F.3d 382, 390 (5th Cir. 2001); *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 358, (1989)).

Through 28 U.S.C. Section 1333, Congress has conferred upon the Court admiralty jurisdiction over this dispute. The Court has an obligation to exercise jurisdiction over this matter and is unable to conclude that any "exceptional circumstances" exist to justify abdicating its responsibility in this case.

Therefore, the Court is of the opinion that Hooking Bull's Motion to Dismiss should be DENIED.

**IV. Conclusion**

For the foregoing reasons, Hooking Bull's Motion for Reconsideration on Its Motion for Partial Summary Judgment, and in the Alternative, Defendant's Opposed Motion to Dismiss (Dkt. No. 62) is DENIED.

It is so ORDERED.

SIGNED this 1st day of September, 2009.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE